983 F.2d 1069
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edward Paul JANSKY, Defendant-Appellant.
 No. 92-5289.
 United States Court of Appeals, Sixth Circuit.
 Jan. 11, 1993.
 
 Before KENNEDY, BOYCE F. MARTIN, Jr. and SUHRHEINRICH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant Edward Paul Jansky appeals his sentence under the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), after pleading guilty to conspiracy to possess a controlled substance with intent to distribute and intentionally attempting to possess a controlled substance with intent to distribute. Defendant contends that the District Court erred in adding two points for use of a gun and in not granting him a two or four point reduction for the scale of his role. Because we do not find the District Court's decisions to have been clearly erroneous, we AFFIRM.
 
 I.
 
 2
 Defendant and Stephen Miller were arrested as the result of a sting operation, during which they attempted to purchase 75 pounds of marijuana from undercover agents. Miller arranged and paid for defendant to fly from his home in Forton, Texas to the Nashville, Tennessee airport. Upon defendant's arrival at the Nashville airport, the two then drove to East Ridge, a Chattanooga, Tennessee suburb, where at Miller's instruction defendant rented a motel room under an assumed name. While defendant waited in the room, Miller then met in a restaurant with an undercover informant, attempting to set up a purchase of marijuana. Miller attempted to arrange to have the purchase occur in the motel room rented by defendant, but the informant insisted upon consummating the deal in public. After returning to the motel room, Miller went to the area near the restaurant with three bundles of cash in a paper bag. After showing the informant the cash, Miller was shown the marijuana. At that point, Miller was arrested. He was carrying a .22 caliber pistol. Inspection of the bundles of cash revealed that rather than the $45,000 he had arranged to pay, they included only $1,050--the bundles deceptively consisting of large bills on the outside concealing small bills on the inside.
 
 
 3
 Shortly thereafter, agents entered the motel room and arrested defendant. On the motel room's single bed was an open suitcase belonging to Miller. Inside this suitcase were two knives, .22 caliber bullets, and cross-bow bolts, as well as a small amount of marijuana and rolling papers. On the edge of the suitcase, next to the clothes, was a loaded shotgun with a pistol grip. Lying on top of the bed were three plastic garbage bags which smelled strongly of marijuana. Defendant appeared to be intoxicated when the agents entered the room, and he did not resist.
 
 
 4
 While defendant pled guilty to the possession with intent to distribute and conspiracy counts, admitted to accepting the plane ticket from Miller, and testified that he was aware of Miller's plan to purchase marijuana, he denies involvement in the attempted purchase. Instead, defendant claims that he was present because Miller had promised that the two would go to the dog races later that day. Defendant claims that when police entered the motel room, he had already consumed twenty-four cans of beer that day. Defendant was indicted on six counts. He pled guilty to two counts and was sentenced to thirty-two months imprisonment followed by three years supervised release.
 
 II.
 
 5
 District court interpretation of the Guidelines is a question of law to be reviewed de novo. United States v. Edgecomb, 910 F.2d 1309, 1311 (6th Cir.1990). District court findings of fact in applying the Guidelines are to be reviewed only for clear error. United States v. Perry, 908 F.2d 56 (6th Cir.), cert. denied, 111 S.Ct. 565 (1990).
 
 III.
 
 6
 The District Court adjusted defendant's sentence upward two points for possession of a dangerous weapon under U.S.S.G. § 2D1.1(b)(1). Defendant contends that this adjustment was erroneous because the actual attempted deal took place away from the motel room which contained defendant and the shotgun and because assertedly the shotgun was not in defendant's possession. According to Application Note 3 to section 2D1.1(b)(1), this sentence enhancement exists because of "the increased danger of violence when drug traffickers possess weapons." Application Note 3 directs that the two-point enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Thus, in order to reverse the District Court for its application of the firearms enhancement, this Court would have to find it clearly erroneous that it was not clearly improbable that the weapon was connected to the attempted drug trafficking and drug trafficking conspiracy to which defendant pled guilty.
 
 
 7
 Defendant's assertion that he was not in possession of the shotgun found on the edge of an open suitcase on the only bed in the motel room he occupied, if true, would still not make the firearms enhancement erroneous. Defendant could have received the enhancement even without considering the shotgun to be in his possession. If possession of a firearm by one coconspirator is reasonably foreseeable conduct, that possession is attributable to a second coconspirator. United States v. Williams, 894 F.2d 208, 211 (6th Cir.1990). Here, Miller had a pistol with him when he attempted to consummate the deal. Because of the shotgun, knives, and pistol cartridges found in the open suitcase, a district court could easily infer that defendant reasonably should have foreseen Miller's possession of the pistol.
 
 
 8
 Equally groundless is defendant's contention that because neither he nor the shotgun was present at the time and place of the actual attempted purchase of the marijuana, it was improbable the firearm was not connected to the offense. The offenses in this case are attempt and conspiracy to possess with intent to distribute. These offenses are not limited in scope to the time and place at which the substances to be distributed are acquired. It is easy to see how having a confederate available with a weapon could aid in drug possession, even if that confederate is not present when the drugs are actually purchased. This is especially true when the purchaser of the drugs is short-changing the supplier. The clear implication of all of Miller's actions is that he would return, with the marijuana, to the motel room where defendant waited. In fact, Miller initially attempted to arrange for the sale to occur in the motel room.
 
 IV.
 
 9
 The District Court also refused to adjust defendant's sentence downward for being a minimal or minor participant in the criminal activity, under U.S.S.G. § 3B1.2. The four-point reduction for playing a minimal role is for "defendants who are plainly among the least culpable" participants. Application Note 1 to U.S.S.G. § 3B1.2. Indicators of being a minimal participant are a defendant's "lack of knowledge or understanding of the scope or structure of the enterprise and of the activities of others." Id. This reduction is to be "used infrequently." Application Note 2 to U.S.S.G. § 3B1.2. The two-point reduction for playing a minor role applies to "any participant who is less culpable than most other participants, but whose role could not be described as minimal." Application Note 3 to U.S.S.G. § 3B1.2.
 
 
 10
 The only evidence of defendant's involvement with the attempted drug deal is purely circumstantial: his use of the plane tickets purchased by Miller, his rental of the room under an assumed name, and his presence in the motel room at the times Miller attempted to arrange and then to purchase the marijuana. By his own account, he was only along for the dog races and knew no details of Miller's planned deal. In addition, his intoxication at the time of arrest is not the behavior to be expected from a participant in a drug deal at the time the deal went down, especially if defendant is to be taken at his word that he had consumed twenty-four cans of beer. On the other hand, defendant pled guilty. He knew of the drug deal before it happened. He accepted the plane tickets and travel according to Miller's arrangement. He rented the motel under an assumed name. And he was present in the hotel room at the time Miller attempted to arrange and attempted to consummate the deal. The fact that the amount of money Miller actually possessed was deceitful, approximately only one-fortieth of what he had agreed to pay, makes the situation one in which the availability of an armed confederate beneficial. Thus, while the evidence of defendant's role is largely circumstantial and his own testimony is that he played almost no role in the offense, it is more than plausible that his role was nearly equal to Miller's. The only evidence contradicting such a role is defendant's own testimony. Thus, it was not clear error for the District Court to decline to adjust defendant's sentence downward.
 
 V.
 
 11
 For the reasons stated above, we affirm the sentence imposed by the District Court.